UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DAN ALTSCHULD**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 21-cv-02779 (TSC) |
| **GINA M. RAIMONDO**, in her official capacity as Secretary of the United States Department of Commerce, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs are federal employees and contractors working for the Departments of Agriculture, Commerce, Defense, Energy, Health and Human Services, Homeland Security, Justice, and State, as well as the Central Intelligence Agency, Environmental Protection Agency, Office of the Director of National Intelligence, and United States Agency for International Development. Defendants are the heads of those agencies sued in their official capacities. At issue is the implementation of two executive orders requiring COVID-19 vaccinations for federal employees and contractors. *See* Exec. Order No. 14,043, 86 Fed. Reg. 50989 (Sept. 14, 2021) (employees); Exec. Order No. 14,042, 86 Fed. Reg. 50985 (Sept. 14, 2021) (contractors). Plaintiffs allege that the orders constitute unlawful medical inquiries and that any ensuing termination would be discrimination on the basis of disability in violation of the Rehabilitation Act, 29 U.S.C. §§ 791, 793, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq* ("ADA"). Plaintiffs also argue that implementation of the orders will violate the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3. They have moved for a Preliminary Injunction to enjoin Defendants and all other federal agencies from enforcing the vaccination

requirements in the executive orders.  ECF No. 4.  For the reasons set forth below, Plaintiffs' Motion will be DENIED.

## I.     BACKGROUND

The Food and Drug Administration ("FDA") approves vaccines as safe and effective for use and introduction into interstate commerce.  *See* 42 U.S.C. § 262(a)(1), (i)(1).  In emergency situations, the FDCA permits the FDA to issue an "Emergency Use Authorization" ("EUA"), which allows vaccines to be marketed for use before the typical full approval process is complete.  21 U.S.C. §360bbb-3.

As the COVID-19 pandemic heightened, the FDA granted EUAs for COVID-19 vaccines to three companies–Moderna, Pfizer-BioNTech, and Janssen Biotech, Inc. (a subsidiary of Johnson & Johnson).  *See* Emergency Use Authorization (EUA) for an Unapproved Product Review Memorandum (Feb. 27, 2021) https://www.fda.gov/media/146338/download ("J&J EUA"); Emergency Use Authorization (EUA) for an Unapproved Product Review Memorandum (Dec. 18, 2020), https://www.fda.gov/media/144673/download ("Moderna EUA"); Emergency Use Authorization (EUA) for an Unapproved Product Review Memorandum (Dec. 11, 2020), https://www.fda.gov/media/144416/download ("Pfizer EUA").

On August 23, 2021, a Pfizer-BioNTech vaccine under the name "Comirnaty" received full FDA approval.  Aug. 23, 2021 Letter of Approval from FDA to Pfizer Inc., https://www.fda.gov/media/151710/download.  Nearly two weeks later, on September 9, 2021, President Biden issued two executive orders announcing COVID-19 vaccination requirements for federal employees and contractors.  *See* Exec. Order No. 14,043, 86 Fed. Reg. 50989 (Sept. 14, 2021) (federal employees) ("Executive Order 14043"); Exec. Order No. 14,042, 86 Fed. Reg. 50985 (Sept. 14, 2021) (federal contractors) ("Executive Order 14042").  Executive Order 14043

required agencies to implement a program to vaccinate all federal employees, with certain "exceptions only as required by law." The task force coordinating the federal workforce response to the COVID-19 crisis issued guidance directing each agency to "follow its ordinary process to review and consider" potential accommodations and exceptions based on employees' medical or religious requirements. *See* Safer Federal Workforce Task Force, *Enforcement of Vaccination Requirement for Employees*, https://www.saferfederalworkforce.gov/faq/vaccinations/ (accessed Nov. 7, 2021). All other employees were required to be fully vaccinated "no later than November 22, 2021." *See* Safer Federal Workforce Task Force, *Vaccination Requirement for Federal Employees*, https://www.saferfederalworkforce.gov/faq/vaccinations/ (accessed Nov. 7, 2021).

Executive Order 14042 required federal executive departments to include vaccination requirements for contractors and contractor employees in new and existing federal contracts. Federal contractors now have until January 4, 2022 to comply with this condition. *See* Fact Sheet: Biden Administration Announces Details of Two Major Vaccination Policies (Nov. 4, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/11/04/fact-sheet-biden-administration-announces-details-of-two-major-vaccination-policies/ ("Employees falling under the . . . federal contractor rules will need to have their final vaccination dose . . . by January 4, 2022.") ("Contractor Extension Press Release"). Contractors must provide accommodations to employees who request medical or religious exceptions. *See* Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* 7 (Sept. 24, 2021), https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf.

Plaintiffs filed suit on October 21, 2021,[1] claiming that the executive orders compel: (1) unlawful medical inquiries as contemplated by the Rehabilitation Act and the ADA, First Amend. Compl. at 17; (2) disability discrimination in violation of the Rehabilitation Act and the ADA, First Amend. Compl. at 19; and (3) the administration of a purportedly "unlicensed" vaccine, in violation of the FDCA, First Amend. Compl. at 20.  Plaintiffs moved for a Preliminary Injunction on October 19, requesting relief by November 9, 2021.  The court issued an accelerated briefing schedule after the parties met and conferred.  *See* October 29, 2021 Minute Order.  Plaintiffs were also ordered to show cause as to why relief was necessary by November 9, 2021, *see* November 1, 2021 Minute Order, which they filed on November 2, 2021. ECF No. 12.  The court held oral argument on November 5, 2021.

## II.     LEGAL STANDARD

Preliminary injunctions are "extraordinary and drastic remedies" that are "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  Movants must show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The balance of equities and public interest factors "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2019).  The movant bears the burden of showing "that all four factors, taken together, weigh in favor of the injunction."  *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal citation omitted).

---

[1] Plaintiffs later amended their Complaint on October 20 to correct typographical errors.  *See* First Amend. Compl. ECF No. 5.

In the past, courts in this Circuit have applied a "sliding scale" in analyzing these four preliminary injunction factors–a particularly strong showing in one factor could outweigh weakness in another. *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). However, it is unclear if this approach has survived the Supreme Court's decision in *Winter*. *See, e.g.*, *Banks v. Booth*, 459 F. Supp. 3d 143, 149-50 (D.D.C. 2020) (citing *Sherley* 644 F.3d at 393 (D.C. Cir. 2011)). Despite this uncertainty, each factor must still be present. Thus, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief on that basis alone. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp.3d 108, 112 (citing *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

### III.   ANALYSIS

#### A. <u>Irreparable Harm</u>

Plaintiffs advance three theories of irreparable harm. First, that their potential termination and the resultant effects depart so far from a "normal situation" as to render this an "extraordinary case" meriting injunctive relief. Mot. For Prelim. Inj. ("PI Motion"), ECF No. 4 at 17-18 (citing *Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014). Second, that Plaintiffs will suffer irreversible "professional and personal reputational damage" that "will only increase as the pressure for compliance with the vaccination deadline approaches." PI Motion at 20. Third, that they are threatened with the loss of a "Fifth Amendment protected right of occupational liberty." *Id.* None of these theories present irreparable harm meriting injunctive relief, which requires injury that is "*certain, great, and actual*–not theoretical–and *imminent*." *Power Mobility Coal v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (emphasis in original). The injury must also be "beyond remediation" to be truly irreparable. *Chaplaincy of Full Gospel Churches*

5

*v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Thus, the possibility of "adequate compensatory or other corrective relief in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

      1. <u>Potential Job Loss</u>

Plaintiffs allege that "termination of employment or removal from a Federal contract *will* occur" if they remain unvaccinated. PI Motion at 18 (emphasis in original). They also claim that this will have significant follow-on effects, as an upcoming Occupational Safety and Health Administration rule imposing vaccination requirements on private companies with over 100 employees will compound their injury. *Id.*; COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61,402 (Nov. 5, 2021) (to be codified at 29 C.F.R. §§ 1910, 1915, 1917, 1918, 1926, 1928) (adopting an emergency standard "to protect unvaccinated employees of large employers (100 or more employees) from the risk of contracting COVID–19 by strongly encouraging vaccination.") ("OSHA Rule"). The combination of the two, they argue, will create a "modern-day Scarlet Letter scenario in which they are virtually unemployable." PI Motion at 18.

While the executive orders contemplate the eventual termination of unvaccinated employees and contractors who do not qualify for an exemption, Plaintiffs are incorrect that such termination is either imminent or certain. Plaintiffs themselves concede that "no one Plaintiff has received notice that [they] will be removed from the federal workplace or from a federal contract on November 9, 2021." Pls. Resp. to Show Cause Order at 1, ECF No. 12. They also admit that no plaintiff has received a definitive date or timeline of any adverse employment action. *Id.* These concessions fatally undermine Plaintiffs' claim that they are about to suffer certain and great irreparable harm.

To start, under Task Force guidance, federal employee plaintiffs will be offered a five-day education and counseling period, and may also face a 14-day unpaid suspension. They may choose during that time to get vaccinated before any potential termination date. *See* Defs' Mem. in Opp'n. at 9, ECF No. 14. Similarly, Plaintiffs have the option to apply for a medical or religious exemption from the vaccine requirements. By law, they would be shielded from any adverse employment action while their exemption applications were pending or if their applications were approved. *See* Enforcement of Vaccination Requirement for Employees, Safer Federal Workforce Task Force, https://www.saferfederalworkforce.gov/faq/vaccinations/; *see also Williams v. Brown*, No. 21-cv-01332, 2021 WL 4894264 at *10 (D. Or. Oct. 19, 2021) (irreparable harm did not exist during pendency of exception requests); *see also Pelekai v. Hawai'i*, No. 21-cv-00343, 2021 WL 4944804 (D. Haw. Oct. 22, 2021) (no irreparable harm when exception requests granted). For the federal contractor employee plaintiffs, harm is even less imminent or certain. Those plaintiffs now have months–until January 4, 2022–to decide whether to get vaccinated, and Plaintiffs have provided no information regarding specific details of their federal contract employment indicating that they would be terminated before that deadline. *See* Contractor Extension Press Release *supra*.

Plaintiffs also allege that their prospective terminations are an "extraordinary circumstance" that merits contravening the principle that prospective "loss of employment does not constitute irreparable injury." *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 22, 47 (D.D.C.) (citation omitted). Courts can find irreparable harm if "the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, . . . far depart from the normal situation." *Davis*, 76 F.Supp at 65 (D.D.C. 2014) (quoting *Sampson v. Murray*, 415 U.S. 61, 92 at n.68 (1974)).

No such extraordinary circumstance or departure from the norm exists here. Plaintiffs aver that their termination will brand them with a "Scarlet Letter" precluding any future employment. First Amend. Compl. at 18. They also claim that the OSHA Rule requiring vaccinations renders them permanently unemployable. *Id.* at 19. But Plaintiffs have proffered no evidence to support their claim that they would have any difficulty finding new employment, much less that they would be barred permanently. Moreover, Plaintiffs ignore that the OSHA Rule (1) only applies to companies with more than 100 employees, and (2) allows employees to choose between vaccination and weekly testing. *See* OSHA Rule at 61,404 (requiring "employees to either be fully vaccinated against COVID–19 or be tested weekly and wear face coverings."). *But see BST Holdings v. OSHA*, No. 21-60845, slip op. at 2 (5th Cir. Nov. 6, 2021) (staying rule without analysis of preliminary injunction factors).

Even without the weekly testing option, Plaintiffs' unsupported assertion that they will be unable to find future employment is not a sufficient basis for a finding of irreparable harm. *See Sampson*, 415 U.S. at n.68 ("difficulties in immediately obtaining other employment . . . will not support a finding of irreparable injury, however severely they may affect a particular individual."); *Cf.* NATHANIEL HAWTHORNE, THE SCARLET LETTER: A ROMANCE 91 (Project Gutenberg ed., 2021), https://www.gutenberg.org/files/25344/25344-h/25344-h.htm ("She could no longer borrow from the future to help her through the present grief."). Plaintiffs have provided no compelling reason for this court to depart from the numerous decisions holding that no irreparable harm exists when plaintiffs face termination due to a COVID-19 vaccine mandate. *See, e.g.*, *We the Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983 at *19 (2d Cir. Nov. 4, 2021); *Wise v. Inslee*, No. 21-288, 2021 WL 4951571, at *6 (E.D. Wash. Oct. 25, 2021); *Bauer v. Summey,* No. 21-cv-02952, 2021 WL 4900922, at *18 (D.S.C. Oct. 21, 2021); *Johnson*

*v. Brown*, No. 21-1494, 2021 WL 4846060, at *23–25 (D. Or. Oct. 18, 2021); *Mass. Corr. Officers v. Baker*, No. 21-11599, 2021 WL 4822154, at *7 (D. Mass. Oct. 15, 2021); *Harsman v. Cincinnati Child.'s Hosp. Med. Ctr.*, No. 21-597, 2021 WL 4504245, at *4 (S.D. Ohio Sept. 30, 2021); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-105, 2021 WL 4398027, at *7 (E.D. Ky. Sept. 24, 2021).

    2.   <u>Reputational Harm and Other Claims</u>

Plaintiffs also allege they face "grave reputational harm . . . which will only increase as the pressure for compliance with the vaccination deadline approaches." PI Motion at 19-20. Reputational injury may "be used to establish irreparable harm," but only when it is "concrete and corroborated, not merely speculative." *Trudeau v. FTC*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005) (internal citations omitted). As with all elements of the preliminary injunction, Plaintiffs bear the burden of making a "clear showing" that their alleged reputational harm requires the extraordinary remedy of injunctive relief. *See Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Plaintiffs have neglected to make any showing, let alone a clear one, that they will suffer reputational harm. Their factual pleadings on the issue consist solely of 8 one-line anecdotes about alleged workplace harassment due to their unvaccinated status. PI Motion at 19-20.[2] The court cannot find that reputational injury will cause irreparable harm if Plaintiffs do not allege

---

[2] Plaintiffs claim that they would be willing to provide affidavits with more information, but "not without a protective order first being issued, and the affidavits being filed under seal." *Id.* at 20. But Plaintiffs, who bear the "heavy burden of showing extraordinary circumstances based on specific facts that would justify an order" have not moved for such a protective order, or to file these affidavits under seal. *See, e.g.*, *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3, 5-6 (D.D.C. 2013) (quoting *United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 134 (D.D.C. 2012); FED. R. CIV. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .").

any such injuries in the first place, and so their reputational injury claims fail as well. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs' final claim, that their Fifth Amendment right to "occupational liberty" has been violated, also lacks merit. Constitutional violations certainly can be irreparable injury. *Cf. Elrod v. Burns*, 427 U.S. 347, 373-374 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). But an occupational liberty claim requires the government to have imposed a stigma or other impairment that forecloses one's freedom to take advantage of other employment opportunities. *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527 (D.C. Cir. 1994) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)) (cleaned up). Plaintiffs have failed to sufficiently plead that their freedom to take advantage of other employment opportunities has been infringed, nor have they shown that they have been stigmatized. *See* discussion *supra* § A.1, Potential Job Loss. Their allegation of constitutional harm is purely speculative, and their constitutional claims must fail.

## B. <u>Other Preliminary Injunction Factors</u>

Because Plaintiffs have not shown irreparable harm, the court need not evaluate the other preliminary injunction factors. *See, e.g.*, *CityFed Fin. Corp.*, 58 F.3d at 747; *see also Sampson*, 415 U.S. at 88 ("The basis of injunctive relief in the federal courts has always been irreparable harm."). The court will nevertheless briefly address the three remaining factors, as their outcomes reinforce its finding that a preliminary injunction is unwarranted. Given the uncertainty of the "sliding scale" approach in this Circuit after *Winter*, the critical mass of cases declining to enjoin the executive orders based on nearly identical fact patterns, and the

sufficiency of the pleadings in this case, the court finds the likelihood of success on the merits to be slim at best.

The public interest and the balance of equities, however, bear special mention here. The United States government has been battling the COVID-19 virus for almost two years. The pandemic has taken an enormous toll in loss of human life, jobs, travel, education, and has affected almost every aspect of daily life, with especially tragic results for the most vulnerable in our society. Its effects will continue to reverberate on a global scale for many years. The COVID-19 vaccines, which were developed as a result of decades of peer reviewed scientific research and work, present a long hoped-for opportunity to bring an end to the pain and suffering created by the pandemic. *See, e.g.*, CENTERS FOR DISEASE CONTROL AND PREVENTION, UNDERSTANDING MRNA COVID-19 VACCINES (Nov. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html ("Researchers have been studying and working with mRNA vaccines for decades."). Regulatory authorities tasked with protecting the public's health and safety have found them proven, effective, and safe, and the vaccines are estimated to have already saved hundreds of thousands of lives. Decl. of Peter Marks, M.D., Ph.D. at 15-16, ECF No. 14-1. The federal and scientific consensus is that the vaccines are the "best way to slow the spread of COVID-19." Def. Memo. in Opp. at 4 (quoting Executive Order 14043).

Plaintiffs have failed to show irreparable harm and are not entitled to a preliminary injunction. In so ruling, this court is guided by the century-old standard that mandatory vaccinations are a suitable expression of the public interest in health and safety. *See, e.g.*, *Does 1-6 v. Mills*, No. 21-1826, 2021 WL 4860328 at *11 (1st Cir. Oct.19, 2021) *application for injunctive relief denied sub nom*, No. 21A90, 2021 WL 5027177; *see also Jacobsen v. Mass.*,

197 U.S. 11, 31 (1905) ("Nor, . . . can anyone confidently assert that . . . [mandatory vaccinations] have no real or substantial relation to the protection of the public health and the public safety."). Plaintiffs have failed to allege any reasons for this court to depart from this well-settled legal principle and are not entitled to injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction, ECF No. 4, is denied. An Order will accompany this Memorandum Opinion.

Date: November 8, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge